IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NADIA ZAFARI, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-25-02214 |
| KBR WYLE SERVICES, LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration. (ECF No. 11.) The Motion will be denied without prejudice.

### I. BACKGROUND

According to the Complaint, on May 26, 2022, Plaintiff Nadia Zafari began working for Defendant KBR Wyle Services, LLC as a Junior Sourcing Recruiter. (ECF No. 2 ¶ 8.) Approximately 11 months later, Plaintiff applied for a different role with Defendant. (*Id.* ¶ 12.) Plaintiff was not selected for the position. (*Id.* ¶ 19.) Soon after, Plaintiff sent an email to a supervisor regarding her non-selection for the new role. (*Id.* ¶ 26.) Plaintiff alleges that, after she sent this email, she was harassed and retaliated against based on her race and/or national origin. (*Id.* ¶¶ 27, 37, 46.) Plaintiff's employment was ultimately terminated on August 10, 2023. (ECF No. 22-2 at 2.)

Plaintiff sued Defendant in Maryland state court, bringing claims under the Howard County Code and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Defendant timely

removed the action to this Court (ECF No. 1) and filed the instant Motion approximately three weeks later.

In support of its Motion, Defendant provides an affidavit from Wendy Appel, a Human Resources employee for Defendant. Ms. Appel attests that, when Plaintiff accepted her initial employment offer as a Junior Sourcing Recruiter, Plaintiff assented to an arbitration agreement. (ECF No. 11-1 at 12.) Ms. Appel's affidavit states that Plaintiff electronically signed this agreement "[o]n May 10, 2022, at 4:38 p.m." (*Id.*) The affidavit also provides the text of the alleged arbitration agreement. In relevant part, the text states that Plaintiff agreed to arbitrate "any claim, controversy, or dispute, past, present, or future, which in any way arises out of, relates to, or is associated with [her] employment with [Defendant]." (*Id.* at 13.) The agreement included in Ms. Appel's affidavit does not contain a signature block or any other indication that Plaintiff signed it.

In response, Plaintiff contends that she never saw or signed the arbitration agreement. She first notes that her signature does not appear on the agreement attached in Ms. Appel's affidavit. (ECF No. 21 at 3.) Plaintiff then argues that she did not set up her account on Workday—the only website on which she could access and sign her onboarding documents—until 5:22 pm on May 10, 2022, which was *after* the time that Ms. Appel alleges that Plaintiff signed the arbitration agreement. (*Id.* at 4.)

In reply, Defendant has submitted an additional affidavit from Ms. Appel in which she states that Plaintiff's Workday records are all in Central Time, while the email records that Plaintiff provides are all in Eastern Time. (ECF No. 22-1 at 2–3.) Defendant has also provided screenshots of the Workday interface to buttress this claim. (*E.g.*, ECF No. 22-3.) Based on this information, Defendant asserts that Plaintiff actually signed the arbitration agreement at 5:38 p.m. Eastern

Time, which was sixteen minutes after Plaintiff received her log-in credentials. (ECF No. 22 at 8.)

Ms. Appel also describes the standard onboarding procedures for Defendant's new employees, which include setting up a Workday account and signing various documents, including the arbitration agreement. (ECF No. 22-1 at 3.) Notably, Defendant still does not provide an arbitration agreement bearing Plaintiff's handwritten or electronic signature. Rather, as noted above, Ms. Appel attests to the text of the alleged arbitration agreement in her first affidavit. Then, in lieu of a signature, Defendant provides a digital log which states that Plaintiff signed a "DRP Options Brochure" and that her "Signature Type" was "Acknowledgment." (ECF No. 22-4.) A corresponding column labeled "Signature Statement" then states: "MUTUAL AGREEMENT TO THE KBR DISPUTE RESOLUTION PROGRAM AND ARBITRATION OF EMPLOYMENT DISPUTES." (*Id.*) Finally, Ms. Appel declares that the digital log is a "true and correct copy" of a "Workday export." (ECF No. 22-1 at 4.)

## II. STANDARD OF REVIEW

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012) (alteration in original) (quotation omitted). If the Court need not refer to evidence beyond the pleadings and documents integral to the pleadings, then the Court should analyze such a motion under the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See id.* at 477–78. But, when the Court considers evidence outside those categories, the Court must analyze the motion under the Rule 56 standard for summary judgment. *Id.* Here, the Court will consider as evidence employment records and relevant affidavits. Accordingly, the Court will evaluate the instant Motion under the Rule 56 standard.

3

Under Rule 56, a party seeking summary judgment must show that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The Court views the evidence in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). At the same time, the Court remains cognizant of the "liberal federal policy favoring arbitration" and the fundamental principle that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

### III. DISCUSSION

A litigant may compel arbitration if it can show:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991)). Here, only the second element is in dispute.

"In determining whether a valid arbitration agreement exists between the parties, the Court applies ordinary state law principles governing the formation of contracts." *Washington v. Bridgestone Retail Operations, LLC*, No. CV TDC-24-0626, 2024 WL 4793070, at *3 (D. Md. Nov. 14, 2024). To determine the applicable substantive law, the Court applies the conflict of law rules of the state in which it sits, Maryland. *See In re Merritt Dredging Co., Inc.*, 839 F.2d 203,

4

206 (4th Cir. 1988); *Johnson v. Carmax, Inc.*, No. 10–CV–213, 2010 WL 2802478, at *2 (E.D. Va. July 14, 2010). Under Maryland law, the Court applies the law of the state "where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 142 Md.App. 476, 490 (Md. Ct. Spec. App. 2002). Here, Plaintiff was a Maryland resident and worked for Defendant at its office in Howard County, Maryland. (ECF No. 2 ¶¶ 1, 7.) Plaintiff's offer letter was also addressed to her home in Maryland. (ECF No. 21-3 at 1.) Thus, Maryland law applies.

Under Maryland law, formation of a contract requires offer, acceptance, and consideration. *Cochran v. Norkunas*, 398 Md. 1, 919 A.2d 700, 713 (Md. 2007). Plaintiff disputes only whether she accepted the arbitration agreement. As an initial matter, the Court concludes that Defendant has presented sufficient evidence to dispel Plaintiff's timing argument. Ms. Appel explains that Workday's default setting is Central Time and presents screenshots showing that Plaintiff's Workday account was indeed set to Central Time. Meanwhile, as a Maryland resident, Plaintiff's emails were time-stamped in Eastern Time. This refutes the notion that Plaintiff did not have access to Workday at the time that Defendant claims the arbitration agreement was signed.

However, Defendant has not presented sufficient evidence that Plaintiff, in fact, signed the arbitration agreement. Judge Boardman's decision in *Mason v. Domino's Pizza, LLC*, No. DLB-20-1908, 2021 WL 4820520 (D. Md. Oct. 15, 2021) is instructive. In *Mason*, Judge Boardman granted a motion to compel arbitration in a factually analogous situation but based on significantly more evidence that what Defendant presents here. In *Mason*, Domino's submitted an affidavit laying out in granular detail how the employee onboarding process works. *Id.* at *4. Judge Boardman stated:

> Domino's explained that new employees were instructed to review
> the arbitration agreement. Before they could access the signature

5

>page for the agreement, employees viewed a cover letter that stated they had to sign the arbitration agreement to continue employment, a flyer about arbitration, and the arbitration agreement itself. The employees then clicked an "accept" button to enter the data necessary to sign the agreement. Domino's also filed screenshots of the buttons that employees had to click to sign the arbitration agreement.

*Id.* (internal citations omitted). Additionally, Domino's submitted a screenshot of the e-signature page bearing the employee's signature. *Id.* at *5. This "overwhelming evidence" was sufficient to find that there was no genuine dispute of material fact that the employee had signed an arbitration agreement, despite his protestations to the contrary. *Id.*; *accord Miranda Sorto v. Carrols LLC*, No. CV DKC 23-2263, 2024 WL 2783906, at *3–6 (D. Md. May 30, 2024) (granting a motion to compel arbitration based on a similar evidentiary showing).

Here, Defendant has not carried its burden. Ms. Appel's first affidavit provides the text of the alleged arbitration agreement and states that Plaintiff "electronically signed" it. (ECF No. 11-1 at 12–14.) However, Defendant does not attach any document bearing Plaintiff's electronic signature. In Ms. Appel's second affidavit, she describes Defendant's onboarding process, but the explanation is bare bones. (ECF No. 22-1 at 3.) It does not describe the manner in which employees electronically sign the arbitration agreement nor does it provide screenshots of the process. The only evidence that Defendant provides of the signature is a purported digital export of a Workday log which says that Plaintiff signed a "DRP Options Brochure" and that her "Signature Type" was "Acknowledgment." (ECF No. 22-4.) But there is no evidence or attestation that the "DRP Options Brochure" is the same arbitration agreement that Ms. Appel included in her original affidavit. There is also no description of what "Acknowledgment" means.

And Ms. Appel has not described in sufficient detail how the digital export was generated. The Court cannot grant Defendant's motion to compel arbitration on such a scant evidentiary showing.[1]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration (ECF No. 11) will be denied without prejudice. Defendant may file a renewed motion, with accompanying evidence, which addresses the concerns the Court has raised. A separate Order follows.

DATED this 9 day of January, 2026.

BY THE COURT:

James K. Bredar
United States District Judge

---

[1] The Court is aware of the Appellate Court of Maryland's unreported decision in *Rotibi v. RealPage, Inc.*, No. 0804, Sept. Term, 2023, 2024 WL 3948110 (Md. App. Ct. Aug. 27, 2024). In *Rotibi*, the Appellate Court granted a motion to compel arbitration upon a showing nearly identical to what Defendant presents here. However, *Rotibi* is not binding nor is the Court persuaded by its conclusion. Rather, as laid out above, this Court requires more evidence to demonstrate the existence of a valid arbitration agreement.