IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NADIA ZAFARI,                              *

    Plaintiff,                             *

    v.                                     *      CIVIL NO. JKB-25-02214

KBR WYLE SERVICES, LLC,                    *

    Defendant.                             *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Renewed Motion to Stay Proceedings and to Compel Arbitration. (ECF No. 26.) The Motion will be granted.

### I.    *Factual and Procedural Background*

Plaintiff Nadia Zafari alleges that she began working for Defendant KBR Wyle Services, LLC as a Junior Sourcing Recruiter in May 2022. (ECF No. 2 ¶ 8.) On April 26, 2023, she applied for the position of Talent Acquisition Specialist. (*Id.* ¶ 11.) Plaintiff was not selected for the position under circumstances she suggests were discriminatory. (*Id.* ¶¶ 16–25.) Plaintiff emailed Defendant's Business Integrity Department regarding her non-selection. (*Id.* ¶ 26.) Plaintiff alleges that, after she sent this email, she was harassed and retaliated against based on her race and/or national origin. (*Id.* ¶¶ 27, 37, 46.) Plaintiff brought claims pursuant to the Howard County Code and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (*Id.* ¶¶ 34–50.)

Defendant filed an initial Motion to Dismiss Complaint and to Compel Arbitration, arguing that Plaintiff's claims were subject to an arbitration agreement to which she agreed during her employment onboarding. (ECF No. 11.) Plaintiff opposed. (ECF No. 21.) The Court denied the

motion without prejudice because Defendant had not provided sufficient evidence that Plaintiff assented to the alleged arbitration agreement. (ECF Nos. 23–24.)

Defendant has filed a Renewed Motion to Stay Proceedings and to Compel Arbitration. (ECF No. 26.) In support of its Motion, Defendant explains that Plaintiff agreed to an arbitration agreement during the onboarding process for the job by executing a "Mutual Agreement to the KBR Dispute Resolution Program and Arbitration of Employment Disputes" ("Agreement"). (ECF No. 26-1 at 2–9.) The Agreement provides that

> By accepting or continuing employment with KBR Inc. or its subsidiaries or affiliated companies (collectively, The Company), and in consideration of the promises below and your employment with The Company, you and The Company agree as follows: It is in the interest of the company and its employees that, whenever possible, disputes relating to employment matters be resolved quickly and fairly. Accordingly, KBR has established a Dispute Resolution Program (DRP), a multi-option program including an ombudsman's office, for the resolution of disputes. For any matter that remains unresolved between you and The Company, The KBR Dispute Resolution Program, with final and binding arbitration as its last option, shall be the exclusive remedy for any claim, controversy, or dispute, subject to the exceptions discussed below, between you and The Company. . . .
>
> [T]his Agreement covers and applies to any claim, controversy, or dispute, past, present, or future, which in any way arises out of, relates to, or is associated with your employment with The Company and/or the termination of your employment . . . Claims which are covered by the Agreement include all common-law and statutory claims, including, but not limited to, any claim for . . . violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, age, national origin, disability, and any other protected status . . .
>
> **YOU AND THE COMPANY ACKNOWLEDGE THAT THE RIGHT TO A COURT TRIAL AND TRIAL BY JURY ARE PROCEDURAL RIGHTS OF VALUE, AND KNOWINGLY AND VOLUNTARILY WAIVE SUCH RIGHTS FOR ANY DISPUTE SUBJECT TO THE TERMS OF THIS AGREEMENT.**

(*Id.* at 3 (emphasis in original).)

Defendant describes the onboarding process, and its briefing is accompanied by screenshots of the process, declarations by Wendy Appel (Principal Generalist, HR), and other

2

relevant documents. (*See id.*; ECF Nos. 26-2–4.) As Defendant explains, "[o]utstanding onboarding documents and tasks for new employees remain in the employee's 'My Tasks' list until the document and/or task is completed. Any incomplete task will remain on the My Tasks list until completed, and no task included in the onboarding process may be skipped or omitted." (ECF No. 26-1 at 2.) And "[o]nce the new employee has had the opportunity to review the Agreement, there is an option at the bottom where the employment may indicate their agreement by clicking the empty box next to 'I Agree.'" (*Id.* at 4–5.) Employees cannot bypass the "I Agree" checkbox, and will get an error message if the employee hits the "Submit" button without also checking the "I Agree" box. (*Id.* at 5.) Once the employee checks "I Agree" and hits the "Submit" button, the task clears from the "My Tasks" list. (*Id.* at 6.) The system then records details such as the date, time, and IP address for the employee, and completion of onboarding documents is recorded in the employee's "WorkDay" profile. (*Id.* at 7.) Defendant provides screenshots of this process. (*See generally id.*) Defendant explains—and provides evidence—that "the WorkDay platform shows that Plaintiff engaged with the platform on May 10, 2022, beginning at 4:21:50 PM (Central) and ending at 5:13:39 PM (Central), using her WorkDay account (i.e., 20024024@id.kbr.com / Nadia Zafari) from IP address 98.192.204.67." (*Id.*) Defendant further explains that "Plaintiff submitted her consent and acknowledgement to the subject Agreement on May 10, 2022, at 4:38:09 PM (central), approximately seventeen minutes after the session began." (*Id.* at 8.)

Plaintiff asserts that she does not recall executing the Agreement and that she was not provided a copy of it. (ECF No. 30 at 5.) Plaintiff "incorporates herein Exhibits 2 and 3, detailing her offer letter and routine administrative onboarding tasks Zafari had to complete prior to starting her employment." (*Id.*) She asserts that "[n]owhere in those documents is there a reference to, or

condition to; execute an arbitration agreement before commencement of employment." (*Id.*) However, the document that provides the "routine administrative onboarding tasks Zafari had to complete prior to starting her employment" includes the various steps required for onboarding, including the following task: "Review Regional Document list by clicking blue hyperlink and click on checkbox to acknowledge document(s)." (ECF No. 30-3 at 11.) That task includes reference to the Agreement, including all of the above-quoted language provided in the Agreement. (*Id.*)

## II.   *Standard of Review*

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012) (alteration in original) (quotation omitted). If the Court need not refer to evidence beyond the pleadings and documents integral to the pleadings, then the Court should analyze such a motion under the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See id.* at 477–78. But, when the Court considers evidence outside those categories, the Court must analyze the motion under the Rule 56 standard for summary judgment. *Id.* Here, the Court will consider as evidence employment records and relevant affidavits. Accordingly, the Court will evaluate the instant Motion under the Rule 56 standard.

Under Rule 56, a party seeking summary judgment must show that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The Court views the evidence in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). At the same time, the Court remains cognizant of the "liberal federal

policy favoring arbitration" and the fundamental principle that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

### III.    Discussion

Defendant seeks enforcement of the Agreement pursuant to the Federal Arbitration Act, which provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. A litigant may compel arbitration if it can show:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991)). Under Maryland law,[1] formation of a contract—including an agreement to arbitrate—requires offer, acceptance, and consideration. *Cochran v. Norkunas*,

---

[1] "In determining whether a valid arbitration agreement exists between the parties, the Court applies ordinary state law principles governing the formation of contracts." *Washington v. Bridgestone Retail Operations, LLC*, Civ. No. TDC-24-0626, 2024 WL 4793070, at *3 (D. Md. Nov. 14, 2024). To determine the applicable substantive law, the Court applies the conflict of law rules of the state in which it sits, Maryland. *See In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 206 (4th Cir. 1988). Under Maryland law, the Court applies the law of the state "where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490 (Md. Ct. Spec. App. 2002). Here, all actions occurred in Maryland.

5

919 A.2d 700, 713 (Md. 2007). Plaintiff disputes only that she accepted the Agreement. The parties do not dispute that—to the extent a valid arbitration agreement exists—it covers her claims.

The Court concludes that a valid arbitration agreement exists and this case must be stayed. *See Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.").

Defendant provides evidence of the onboarding process, how employees are to manifest their assent to the Agreement, and how Plaintiff herself manifested her assent. Judge Boardman's decision in *Mason v. Domino's Pizza, LLC*, No. DLB-20-1908, 2021 WL 4820520 (D. Md. Oct. 15, 2021) is instructive. There, Judge Boardman granted a motion to compel arbitration where:

> Domino's explained that new employees were instructed to review the arbitration agreement. Before they could access the signature page for the agreement, employees viewed a cover letter that stated they had to sign the arbitration agreement to continue employment, a flyer about arbitration, and the arbitration agreement itself. The employees then clicked an "accept" button to enter the data necessary to sign the agreement. Domino's also filed screenshots of the buttons that employees had to click to sign the arbitration agreement.

*Id.* at *4 (internal citations omitted). Additionally, Domino's submitted a screenshot of the e-signature page bearing the employee's signature. *Id.* at *5. This evidence was sufficient to find that there was no genuine dispute of material fact that the employee had signed an arbitration agreement, despite his protestations to the contrary. *Id.* Defendant has made a similar showing here, and the Court concludes that there is no genuine dispute of material fact that Plaintiff agreed to be bound by the Agreement.

Plaintiff's arguments do not compel a different result. Plaintiff argues that "Defendant does not include the single document at issue here—a copy of the executed arbitration agreement between Zafari and Defendant." (ECF No. 30 at 3.) However, Defendant has presented overwhelming evidence that Plaintiff did indeed click on and agree to the Agreement, through its evidence reflecting the onboarding process and its evidence of Plaintiff's checking the box to indicate her assent. (See ECF No. 26-3 at 27 (export reflecting that Plaintiff assented to the Agreement at 16:38:09 on May 10, 2022));[2] see Miranda Sorto v. Carrols LLC, Civ. No. DKC 23-2263, 2024 WL 2783906, at *4 (D. Md. May 30, 2024) ("[The defendant] has provided 'overwhelming evidence' that [the plaintiff] clicked on and signed the arbitration agreement.")

Plaintiff also argues that "Defendant cannot and does not represent that such onboarding mechanism was in place at the time of Zafari's hiring." (ECF No. 30 at 3.) First, this is not true. (See ECF No. 26-2 ¶¶ 4–5; ECF No. 26-3 ¶¶ 17–19; ECF No. 26-4 ¶¶ 10–12.) Second, and critically, Plaintiff herself concedes this point. In her Opposition, Plaintiff "incorporates [an exhibit detailing] routine administrative onboarding tasks *Zafari had to complete prior to starting her employment.*" (Id. at 5 (emphasis added).) She is incorrect that, as she says "[n]owhere in those documents is there a reference to, or condition to, execute an arbitration agreement before commencement of employment." (Id.) The document Plaintiff attaches to her Opposition provides that one of the onboarding steps she must complete is to "Review Regional Document list by clicking blue hyperlink and click on checkbox to acknowledge document(s)." (ECF No. 30-3 at 11.) That task requires her to review the Agreement, to click on the "I Agree" checkbox, and click

---

[2] Plaintiff asserts that this document does not reflect the full language of the Agreement and that "this Honorable Court is left to speculate on what the parties contracted for and the purported terms of any such agreement." (ECF No. 30 at 5.) This is a stretch. Defendants have presented ample evidence of the manner in which new employees provide their assent to the Agreement, as well as the language of the Agreement. Further, that the full text of the Agreement was not printed on ECF No. 26-3 does not require the Court to speculate, given that Appel also attested that the document reflects Plaintiff's execution of the subject Agreement. (ECF No. 26-3 ¶ 17.)

"Submit," and the task includes all of the language from the Agreement. (*Id.*) Thus, the document that Plaintiff contends contains no reference to the Agreement in fact quotes the entirety of the Agreement and notes that she must assent to it. (*Id.*)

In the face of the evidence set forth by Defendant, Plaintiff's assertion that she does not recall agreeing to an arbitration agreement does not carry the day. Thus, the Court concludes that there is no genuine dispute of material fact, and a valid arbitration agreement exists. And Plaintiff does not dispute that—to the extent that an agreement to arbitrate exists—it covers the claims in her Complaint.

## IV.    Conclusion

For the foregoing reasons, Defendant's Renewed Motion to Stay Proceedings and to Compel Arbitration (ECF No. 26) will be granted and this case will be stayed. Accordingly, it is ORDERED that:

1. Defendant's Renewed Motion to Stay Proceedings and to Compel Arbitration (ECF No. 26) is GRANTED; and

2. The Clerk SHALL ADMINISTRATIVELY CLOSE this case. The parties SHALL NOTIFY the Court in the event that the case must be reopened.

DATED this ___1___ day of July, 2026.

BY THE COURT:

James K. Bredar
United States District Judge

8